Citation Nr: 1619688 
Decision Date: 05/16/16 Archive Date: 05/27/16

DOCKET NO. 13-35 117 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Medical and Regional Office Center in Wichita, Kansas


THE ISSUES

1. Entitlement to service connection for a bilateral hearing loss disorder. 

2. Entitlement to service connection for tinnitus. 


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


WITNESS AT HEARING ON APPEAL

The Veteran




ATTORNEY FOR THE BOARD

Thomas D. Jones, Counsel


INTRODUCTION

The Veteran, who is the appellant, served on active duty from June 1966 to June 1969. He received the Combat Infantryman's Badge, among other decorations, for this service.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a September 2012 rating decision of a Regional Office (RO) of the Department of Veterans Affairs (VA) in Wichita, Kansas. 

In October 2015, the Veteran testified before the undersigned Veterans Law Judge, seated at the RO. A transcript of this hearing is of record. 


FINDINGS OF FACT

1. The Veteran did not have impaired hearing of either ear at the time of his separation from service or within one year of separation from service. 

2. Symptoms of bilateral hearing loss have been continuous since service separation. 

3. The Veteran had continuous symptoms of tinnitus since service. 






CONCLUSIONS OF LAW

1. The criteria for service connection for a bilateral hearing loss disorder have been met. 38 U.S.C.A. §§ 1110, 1112, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.303, 3.307, 3.309, 3.385 (2015). 

2. The criteria for service connection for tinnitus have been met. 38 U.S.C.A. §§ 1110, 1112, 1137, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

The Veteran's claim of entitlement to service connection for bilateral hearing loss and tinnitus has been granted. As such, the Board finds that any error related to the VCAA on these claims is moot. See 38 U.S.C. §§ 5103 , 5103A (West 2002); 38 C.F.R. § 3.159 (2007); Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

II. Service Connection - Hearing Loss and Tinnitus

The Veteran seeks service connection for a bilateral hearing loss disorder and for tinnitus. He asserts he has bilateral hearing loss and tinnitus as a result of noise exposure during service, to include exposure to weapons fire and artillery. 

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C.A. §§ 1110, 1131 (West 2014); 38 C.F.R. § 3.303(a) (2015). For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. With chronic disease as such in service, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes. 38 C.F.R. § 3.303(b) (2015). Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d) (2015). When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with a veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. 

Where a veteran who served for ninety days or more during a period of war (or during peacetime service after December 31, 1946) develops certain chronic diseases, such as an organic disease of the nervous system, to a degree of 10 percent or more within one year from separation from service, such diseases may be presumed to have been incurred in service even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. See 38 U.S.C.A. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309.

In this case, organic diseases of the nervous system are listed among the "chronic diseases" under 38 C.F.R. § 3.309(a); therefore, 38 C.F.R. § 3.303(b) potentially applies. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). Where the evidence shows a "chronic disease" in service or "continuity of symptoms" after service, the disease shall be presumed to have been incurred in service. For the showing of "chronic" disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. With chronic disease as such in service, subsequent manifestations of the same chronic disease at any later date, however remote, are service-connected, unless clearly attributable to intercurrent causes. If a condition noted during service is not shown to be chronic, then generally, a showing of "continuity of symptoms" after service is required for service connection. 38 C.F.R. § 3.303(b). Additionally, sensorineural hearing loss and tinnitus are considered by VA to be organic diseases of the nervous system and are thus subject to presumptive service connection under 38 CFR § 3.309(a). M21-1MR III.iv.4.B.12.a. 

Specific to claims for service connection, impaired hearing is considered a disability for VA purposes when the auditory threshold in any of the frequencies of 500, 1000, 2000, 3000, or 4000 Hertz is 40 decibels or greater; the thresholds for at least three of these frequencies are 26 or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385. 

In the present case, the Veteran has been awarded the Combat Infantryman's Badge (CIB), indicative of combat exposure in service. Pursuant to 38 U.S.C.A. § 1154(b), with respect to combat veterans, 

"[VA] shall accept as sufficient proof of service- connection . . . satisfactory lay or other evidence of service incurrence or aggravation of such injury or disease, if consistent with the circumstances, conditions and hardships of such service . . . Service-connection of such injury or disease may be rebutted by clear and convincing evidence to the contrary." See also 38 C.F.R. § 3.304(d). 

38 U.S.C.A. § 1154(b), however, can be used only to provide a factual basis upon which a determination could be made that a particular disease or injury was incurred or aggravated in service, not to link the claimed disorder etiologically to the current disorder. See Libertine v. Brown, 9 Vet. App. 521, 522- 23 (1996). 38 U.S.C.A. § 1154(b) does not establish service connection for a combat veteran; it aids him or her by relaxing the adjudicative evidentiary requirements for determining what happened in service. See Wade v. West, 11 Vet. App. 302, 305 (1998) (holding that "a combat veteran who has successfully established the in-service occurrence or aggravation of an injury pursuant to § 1154(b), must still submit sufficient evidence of a causal nexus between that in-service event and his or her current disability"). A veteran (or in this case, the appellant) must still generally establish the claim by competent medical evidence tending to show a current disability and a nexus between that disability and those service events. See Gregory v. Brown, 8 Vet. App. 563, 567 (1996). 

When examined for service entrance in June 1966, the Veteran was without any hearing impairment. On examination for service separation in May 1969, the Veteran's hearing acuity was as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
0
0
0
N/A
0
LEFT
0
0
0
N/A
0

On a concurrent report of medical history completed at service separation, the Veteran denied any history of ear trouble or difficulty hearing. 

Post-service, the record does not reflect a diagnosis of a hearing loss disorder until 2012. A VA audiological examination was afforded the Veteran in June 2012. At the time of the VA examination pure tone thresholds, in decibels, were as follows: 




HERTZ



500
1000
2000
3000
4000
RIGHT
20
20
30
50
70
LEFT
15
20
20
60
65

The average pure tone threshold was 43dBs in the right ear and 42dBs in the left ear. Speech audiometry revealed speech recognition ability of 94 percent in the right ear and of 96 percent in the left ear. Regarding the etiology of the Veteran's current bilateral hearing loss, the examiner opined that it was less likely than not that this hearing loss was related to active duty service. The examiner noted that the Veteran's hearing acuity was essentially unchanged from service entrance to service separation, suggesting no hearing loss disorder was sustained therein. The examiner further noted the Veteran had post-service noise exposure from his employment as a police officer and recreationally from shooting at a firing range. Concerning the tinnitus, the Veteran reported a history of ringing for 40+ years that was constant and bilateral. The Veteran was unsure of the circumstances of onset. The examiner offered the same opinion regarding the Veteran's reported tinnitus, and noted that the service treatment records are negative for any diagnosis of or treatment for tinnitus. 

The Veteran has testified that he was exposed to combat and used a variety of weapons and no hearing protection was worn at all. He further explained that explosions were tremendous and would knock you to the ground. He explained after these firefights he had difficulty hearing for days afterwards. He also described ringing in the ears that he noticed after these firefights. He indicated that the hearing and ringing never really went back to normal. The Veteran also testified that he started seeing his family physician, J.W., M.D. shortly after service and he treated the ringing with eardrops and a water-pick thing but nothing ever stopped the ringing. The Veteran also explained that he wore hearing protection any time he was on the firing range for his employment or recreation. He further noted that the difference in weapons between the military and the police department was tremendous and the firepower of the military was much louder.

The Veteran also submitted several lay statements in support of his claim. His brother R.G. reported that the family noticed that he wasn't hearing as well as he used to when he returned from serving in Vietnam. V.C., the Veteran's brother-in-law indicated he knew the Veteran since 1966 and noticed a significant hearing loss in the last few years. A.G.A., the Veteran's daughter, reported that she recalled her father having hearing problems for as long as she can remember. The Veteran's daughter, S.O. also reported that her father always had trouble hearing and always asked people to speak up. She indicated that for all of her life, the last 32 years, he had trouble hearing people. S.A.G., the Veteran's son, explained that his father always had difficulty hearing. In this 2012 letter, Mr. G. indicated he was 35 and that he remembered his father asking him to repeat things from the time he was a little boy.

Having considered the entirety of the record, the Board finds the preponderance of the evidence is at an approximate balance. While the VA examiner provided a negative opinion, that opinion was based, in part, on the absence of hearing loss during service. In Hensley, the Court noted that 38 C.F.R. § 3.385 , "does not preclude service connection for a current hearing disability where hearing was within normal limits on audiometric testing at separation from service." Hensley v. Brown, 5 Vet. App. 155 (1993). The Court explained that, "when audiometric test results at a veteran's separation from service do not meet the regulatory requirements for establishing a 'disability' at that time, he or she may nevertheless establish service connection for a current hearing disability by submitting evidence that the current disability is causally related to service." Id. at 159-160. Accordingly, the VA examination is afforded little probative value. On the other hand, the Veteran has provided competent and credible evidence that the symptoms of hearing loss and tinnitus began during service and have been continuous since service. His statements are supported by lay statements of his brother, brother-in-law and children. Additionally, the Board notes that during the VA examination the Veteran reported having tinnitus for over 40 years, placing the onset of his condition to the early 1970s. 

Under the "benefit-of-the- doubt" rule, where there exists "an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter," the Veteran shall prevail upon the issue. Ashley v. Brown, 6 Vet. App. 52, 59 (1993). In this case, there is positive and negative evidence on the issues of whether the Veteran's current bilateral hearing loss and tinnitus are etiologically related to service. As such, in resolving all reasonable doubt in the Veteran's favor, service connection for bilateral hearing loss and tinnitus is warranted.












ORDER

Service connection for a bilateral hearing loss disorder is granted. 

Service connection for tinnitus is granted. 



____________________________________________
H. SEESEL
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs